John A. Delis, Bar No. 149793
T. Patrick Long, Bar No. 182394
Abraham H. Tang, Bar No. 186334
LONG & DELIS
400 N. Tustin Ave., Suite 370
Santa Ana, CA 92705
(714) 668-1400/fax (714) 668-1411

Attorneys for Plaintiffs, Qwente Bryant, Lisa Cavanaugh, Candice Davis, Michael Lance Kennedy, Michael Lowery, Holly Richardson, and Robin Tamburri

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Qwente Bryant, Lisa Cavanaugh, Candice Davis, Michael Lance Kennedy, Michael Lowery, Holly Richardson, and Robin Tamburri, each individually, <br><br> Plaintiffs, <br><br> vs. <br><br> BAR LOUIE ANAHEIM, INC., an Illinois corporation; BAR LOUIS AMERICA; RESTAURANTS AMERICA, and DOES 1 through 75, inclusive, <br><br> Defendants. | CASE NO. SACV 10-0906 DOC (AJWx) <br><br> \| **FIRST AMENDED COMPLAINT ALLEGING CAUSES OF ACTION FOR:** <br><br> **(1) FAILURE TO PAY OVERTIME (LABOR CODE §§ 510, 511, AND 515, I.W.C. WAGE ORDERS 5-1998, 5-2000, 5-2001);** <br><br> **(2) FAILURE TO PROVIDE MEAL PERIODS (LABOR CODE §§ 226.7 AND 512, AND I.W.C. WAGE ORDERS 5-1998, 5-2000, 5-2001);** <br><br> **(3) FAILURE TO PROVIDE REST BREAKS (LABOR CODE § 226.7 AND I.W.C. WAGE ORDERS 5-1998, 5-2000, 5-2001);** <br><br> **(4) WILLFUL FAILURE TO PAY "WAITING TIME"** |

1

---

**FIRST AMENDED COMPLAINT**

)     PENALTIES FOR WAGES
)     AND/OR OVERTIME
)     WAGES PAST DUE AND
)     OWING (LABOR CODE § 203
)     AND I.W.C. WAGE ORDERS
)     5-1998, 5-2000, 5-2001);
)  (5) FAILURE TO PROVIDE
)     CORRECT OR ITEMIZED
)     PAY STUBS (LABOR CODE §
)     226);
)  (6) FAILURE TO REIMBURSE
)     EMPLOYEES FOR
)     REASONABLE EXPENSES
)     (LABOR CODE § 2802);
)  (7) BREACH OF WRITTEN AND
)     IMPLIED-IN-FACT
)     CONTRACT;
)  (8) FALSE PRETENSE AND
)     INTENTIONAL
)     MISREPRESENTATION;
)  (9) RETALIATION AND
)     WRONGFUL
)     TERMINATION (LABOR
)     CODE § 1102.5, *LUJAN* AND
)     *TAMENY*)
)  (10) UNFAIR COMPETITION
)     (BUSINESS & PROFESSIONS
)     CODE §§ 17200 ET SEQ.)
)  (11) FAILURE TO PAY
)     OVERTIME WAGES PER
)     THE FAIR LABOR
)     STANDARDS ACT ("FLSA"
)     §§ 203, 206, 207, 216)

PRAYER FOR DAMAGES,
PENALTIES, LIQUIDATED
DAMAGES, INJUNCTIVE AND
OTHER EQUITABLE RELIEF,
AND RESTITUTION; DEMAND
FOR JURY TRIAL

2

FIRST AMENDED COMPLAINT

1. Plaintiffs Qwente Bryant, Lisa Cavanaugh, Candice Davis, Michael Lance Kennedy, Michael Lowery, Holly Richardson and Robin Tamburri, individually, bring this action against:

   a. Bar Louie Anaheim, Inc., an Illinois corporation registered to do business in California;

   b. Bar Louie America, Inc., an Illinois corporation registered to do business in California;

   c. Restaurants-America Consulting Group, Inc., a registered Illinois corporation informed and believe to be a person or individual with implied if not express control over the nature and structure of the employment relationship within the meaning of 29 U.S.C. Section 203(a) with respect to the Plaintiffs employed by the entities listed in paragraphs 1.a., 1.b., and 1.c.

   d. Restaurants-America Management, LLC, a registered Illinois LLC informed and believe to be a person or individual with implied if not express control over the nature and structure of the employment relationship within the meaning of 29 U.S.C. Section 203(a) with respect to the Plaintiffs employed by the entities listed in paragraphs 1.a., 1.b., and 1.c.

   e. Restaurants-America Trademark, Inc., a registered Illinois corporation informed and believe to be a person or individual with implied if not express control over the nature and structure of the employment relationship within the meaning of 29 U.S.C. Section 203(a) with respect to the Plaintiffs employed by the entities listed in paragraphs 1.a., 1.b., and 1.c.

3

**FIRST AMENDED COMPLAINT**

f.  Roger Greenfield, a natural person who, as president, officer or manager of at least some of the entities listed above, Plaintiffs are informed and believe to be a person or individual with implied if not express control over the nature and structure of the employment relationship within the meaning of 29 U.S.C. Section 203(a) with respect to the Plaintiffs employed by the entities listed in paragraphs 1.a., 1.b., and 1.c.

g.  Theodore "Ted" Kasemir, a natural person who, as secretary or officer of at least some of the entities listed above, Plaintiffs are informed and believe to be a person or individual with implied if not express control over the nature and structure of the employment relationship within the meaning of 29 U.S.C. Section 203(a) with respect to the Plaintiffs employed by the entities listed in paragraphs 1.a., 1.b., and 1.c.

h.  Sun Capital Partners (V), Ltd., a Florida corporation who Plaintiffs are informed purchased the assets of forty (40) Bar Louie restaurants across the United States, including purposefully availing itself of the State of California by purportedly purchasing the assets of two Bar Louie restaurants in California, including Arcadia, and Anaheim, either or both locations of which the Plaintiffs worked, and in purposefully setting up BL Restaurant Operations, LLC, a Delaware LLC to operate, at a minimum, these two Bar Louie restaurants in California.

i.  BL Restaurant Operations, LLC, a Delaware  LLC who Plaintiffs are informed and believes took over operations of at least some of the restaurants alleged herein sometime in or about May 2010/June 2010.

(the foregoing defendants of whom will be collectively referred to as "Employer Defendants"), and Does 1-25 (also referred to as part of

4

**FIRST AMENDED COMPLAINT**

"Employer Defendants"), Does 26-50 (referred to, generally, as "Managing Agent Defendants"), and Does 51-75 (referred herein as "Other Defendants") (Does 1-75 and the named Defendants are collectively referred to as Defendants in the plural, or Defendant in the singular) and allege, on information and belief, as follows:

2. Each of the Plaintiffs is or was employed by Employer Defendants, or each of them, in the City of Anaheim, County of Orange, for a portion of, or the entirety of, the relevant time period set forth herein. In addition, Plaintiff Holly Richardson was assigned to participate in implementing training to employees hired by two other restaurants operated by Employer Defendants. These other two restaurants are known as Townhouse Wine + Bar in Sherman Oaks, Los Angeles County, and Bar Louie Restaurant in Arcadia, Los Angeles County. Plaintiffs are informed and believe that Townhouse Wine + Bar was set up under the entity Townhouse Galleria, LLC while Bar Louie Restaurant in Arcadia was set up under the entity Prime Bar Arcadia, LLC.

## PERSONAL JURISDICTION, ALTER EGO, JOINT EMPLOYER DOCTRINE AND SUCCESSORSHIP LIABILITY DOCTRINE

3. Defendants Bar Louie Anaheim, Inc., Bar Louie America, Inc., Prime Bar Arcadia, LLC and Townhouse Galleria, LLC are each Defendants who purposefully availed themselves of the laws and protections of the State of California and those of this judicial district by setting up and operating restaurants in the County of Los Angeles and the County of Orange during the time periods alleged herein. Such contacts were continuous and systematic and enable this Court to exercise personal jurisdiction over each of them.

4. The true names and capacities, whether individual, corporate, associate, representative or otherwise, of Defendants, Does 1-75, inclusive, are

---

**FIRST AMENDED COMPLAINT**

unknown to Plaintiffs, who therefore sue these defendants by said fictitious names. Does 1-25 will also be designated as part of Employer Defendants; Does 26-50 as Managing Agents Defendants; and Does 51-75 as Other Defendants. All Defendants are collectively referred to as Defendants or Defendant. Plaintiffs will amend this complaint to allege the true names and capacities of Does 1 through 25, 26 through 50, and 51-75 when they have been ascertained. Does 1 through 25, 26 through 50, and 51-75 are in some manner legally responsible for the wrongs and injuries alleged herein.

5. Each Defendant and every Defendant acted as the agent or employee of the others and each acted within the scope of that agency or employment.

6. It is the purpose and function of the alter ego doctrine to prevent injustice. The doctrine of alter ego is generally resorted to when it is necessary to avoid a grave injustice. Adherence to the fiction of the separate existence(s) of the corporations operating Defendants Bar Louie Anaheim, Inc. and Bar Louie America, Inc. (hereafter sometimes referred to as "Bar Louie Defendants") would, under the particular circumstances, sanction a fraud and/or promote injustice. If a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, courts may "pierce the corporate veil" jurisdictionally and attribute "contacts" accordingly. (*Certified Building Products, Inc. v. NLRB* (9th Cir. 1976) 528 F.2d 968, 969.) This Court has personal jurisdiction over Restaurants-America Consulting, Group, Inc., Restaurants-America Management, LLC, Restaurants-America Trademark, Inc., Roger Greenfield and Ted Kasemir as they, and each of them, whether individually or in conspiratorial fashion, personally directed the activities toward, and therefore, purposefully availed themselves of, the forum state of California that give rise to the allegations of wrongdoing in this complaint. (*See Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.* (CD Cal. 1995) 880 F.Supp. 743, 750. Plaintiffs are

6

informed and believe that the situation presented herein regarding the two named Bar Louie Defendants is that they were each operated by the three Restaurants-America Defendants, Greenfield and/or Kasemir  without corporate separateness and in bad faith in failing to apply and/or comply with California and federal labor laws relating to the implementation of similar, if not identical policies, patterns and/or practices regarding the training, directing, supervising, contracting, and paying of employees like Plaintiffs. As such corporate separateness was illusory and not real, Plaintiffs accordingly allege that the separateness of each of the Bar Louie Defendants not be recognized to avoid probable fraud, confusion and/or injustice to Plaintiffs, and each of them, as said Defendants acted with: (a) such unity of interest and ownership that, in reality, no separate entities exist; and (b) any failure to disregard the separate identities of said named Defendants would result in fraud or injustice. (*American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert* (9th Cir. 1996) 94 F.3d 586, 591.

6.a. The doctrine of joint employment holds all joint employers liable for liabilities owed to an employee of the joint employers. Plaintiffs allege that Employer Defendants were each joint employers of Plaintiffs, each of them, as all Employer Defendants, and Does 1-25, are not completely disassociated with respect to the employment of said Plaintiffs and that one, if not some of them, controlled another or each other and deemed to have common control over Plaintiffs, or each of them. In essence, Employer Defendants and Does 1-25, jointly and separately, had the power to hire and fire employees, supervised and controlled employee work schedules or employment conditions, determined the rate and method of payment, and maintained employment records.

6.b. *The successorship doctrine provides an exception to the general rule that a purchaser of assets does not acquire a seller's liabilities.* When the

7

FIRST AMENDED COMPLAINT

claim arises from violation of federal rights, courts may allow the plaintiff to recover from the purchaser even if there was a true sale of the seller's business and not merely a reorganization. (*EEOC v. G–K–G, Inc.* (7th Cir. 1994) 39 F.3d 740, 747; App. Auth. Exh. AA.) The main considerations in determining whether a successor employer is liable for FLSA violations committed by its predecessor are: (1) whether the subsequent employer is a "bona fide successor"; (2) whether the subsequent employer had notice of the potential liability; and (3) "the extent to which the predecessor is able to provide adequate relief directly." (*Steinbach v. Hubbard* (9th Cir. 1995) 51 F.3d 843, 845–846; applied in the context of a violation of the F.L.S.A.)

    i. Whether an employer is a "bona fide successor" depends upon the degree of business continuity between the successor and predecessor employers. (*Steinbach v. Hubbard, supra*, 51 F3d at 846.) Successor liability is an equitable doctrine, not an inflexible command, and "in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." (*Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd., Hotel & Restaurant Emp. & Bartenders Int'l Union, AFL–CIO* (1974) 417 US 249, 256, 94 S.Ct. 2236, 2240—defining labor law obligations of successor employer to employees of predecessor; *Steinbach v. Hubbard, supra*, 51 F3d at 846; App. Auth. Exhs. AC and AB, respectively.)

    ii. Successorship liability has also been applied by California state courts in employment cases. (*Babbitt Engineering & Machinery v. Agricultural Labor Relations Bd.* (1984) 152 Cal.App.3d 310, 333-334, 199 Cal.Rptr. 445; *Rivcom Corp. v. Agricultural Labor Relations Bd.* (1983) 34 Cal.3d 743, 764, 670 P.2d 305.)

8

---

**FIRST AMENDED COMPLAINT**

iii. Sun Capital Partners (V), Ltd., has purposefully availed itself of the jurisdiction of this Court by purchasing the two restaurants formally operated by Defendants Bar Louie Anaheim, Inc. and Bar Louie America, Inc.  Plaintiffs are informed and believe that the sale involving the two restaurants characterized the assets of the Bar Louie restaurants in Anaheim and Arcadia as asset purchases. Such a purchase was structured through Sun Capital Partners (V), Ltd. with Bar Louie Defendants' affiliates, the three Restaurants-America Defendatns, or each of them, through the creation and/or involvement of BL Restaurant Operations, LLC. Based thereon, and on information and belief, Sun Capital Partners (V), Ltd. and BL Restaurant Operations, LLC, or each of them, are or were successors to the assets, if not the entire operations involving the Bar Louie Anaheim restaurant and the Bar Louie Arcadia restaurants. In addition, BL Restaurant Operations, LLC is the current owner/operator of the Bar Louie Anaheim and Bar Louie Arcadia restaurants. Based on the foregoing, either or both Sun Capital Partners (V), Ltd. and BL Restaurant Operations, LLC should be liable to Plaintiffs as a matter of equity under the successorship liability doctrine.

## SUBJECT MATTER JURISDICTION, VENUE AND SUPPLEMENTAL JURISDICTION

7. This Court has jurisdiction over enforcement of F.L.S.A. labor violations, and enforcement thereof, pursuant to 29. U.S.C. Section 216(b). There is no requirement to exhaust administrative remedies before filing an lawsuit to enforce the terms and provisions of the FLSA. (*See County of Washington v. Gunther* (1981) 452 U.S. 161, 175, 101 S.Ct. 2242, 2250, fn. 14.) Such violations include the failure by the Defendants to pay each employee "at a rate not less than one and one-half times the regular rate" for all overtime

9

hours that an employee works. (*See* 29 U.S.C. Section 207(a)(1).) Plaintiffs therefore invoke this Court's subject matter jurisdiction herein on the grounds that genuine and existing controversies exist relating to Plaintiffs' federal labor rights under the Fair Labor Standards Act as former and/or present employees of the two Bar Louie Defendants require adjudication. Plaintiffs, and each of them, seek damages in excess of the jurisdictional minimum of this Court.

8. Venue is proper in this judicial district because, at all relevant times hereto, each of the Defendants negligently, intentionally and/or foreseeably committed acts against Plaintiffs, and each of them, that caused harm to Plaintiffs, and each of them, within this judicial district, and most of which were caused within this division of this judicial district. At the times that these wrongs took place and at the time of the filing of the original Complaint, each of the Plaintiffs is informed and believes that he or she was a resident of this judicial district..

a. Further, pursuant to 28 U.S.C. Section 1367(a), this Court has supplemental jurisdiction over Plaintiffs' California state law claims for wage and overtime violations and related theories as a significant part of the transaction of facts, events and wrongs arising from the state law claims overlap and are intertwined with Plaintiffs' federal question claims so as to form the same case or controversy under Article III of the United States Constitution. Plaintiffs note that this Court exercised jurisdiction over the claims in the original complaint after Defendants Bar Louie America, Inc. and Bar Louie Anaheim, Inc. appeared by removing Plaintiffs' original complaint from the Orange County Superior Court to this Court. This Court denied Plaintiffs' Motion to Remand, without prejudice, in September 2010.

10

**FIRST AMENDED COMPLAINT**

### FACTUAL ALLEGATIONS

9.  Bar Louie Defendants, the three Restaurants-America Defendants, Greenfield and/or Kasemir started a restaurant and bar approximately July 2008 located at 321 West Katella Avenue, Suite 212, Anaheim, CA 92802 in The Shops at Anaheim Gardenwalk, or what is commonly referred to as "Gardenwalk." This was the first restaurant and bar that Bar Louie Defendants opened in the State of California, which, on information and belief, is a part of Restaurants America operating over sixty-five (65) restaurants throughout the United States, including, currently, two other Restaurants America restaurants in the State of California. The other two restaurants are, on information and belief, located in Los Angeles County in the City of Sherman Oaks and the City of Arcadia and are known, respectively, as Townhouse Wine + Bar Restaurant, which was set up as Townhouse Galleria, LLC, and Prime Bar Arcadia, LLC DBA Bar Louie Arcadia Restaurant. According to the website, www.restaurants-america.com, Restaurants America operates, nationally, other restaurants and bars named, "Red Star Tavern," "Bluepoint," "The Grillroom," "Primebar," "One North," "Midtown Kitchen," and "Townhouse." (All Defendants identified in this paragraph are sometimes collectively referred to hereafter as "Glenview Defendants," as all of them are affiliated or based out of 1840 Pickwick Ave., Glenview, Illinois, and are alter egos of each other and who jointly employed or controlled the employments of Plaintiffs.)

10. Before the Bar Louie Restaurant in Anaheim was opened, Bar Louie Defendants, or each of them, hired or relocated from its other restaurants various employees, including but not limited to, cooks, an assistant kitchen manager, a kitchen manager, a general manager, a bar manager, bartenders, "barbacks," and servers to start up, open and work at the Bar Louie Restaurant in Anaheim.

11

**FIRST AMENDED COMPLAINT**

11. All individuals hired before Bar Louie Defendants opened up Bar Louie Restaurant in Anaheim assisted, or were requested to assist in, performing various tasks relating to getting Bar Louie Restaurant in Anaheim ready to open. Such jobs, regardless of the position such individuals were hired to perform upon opening, included duties such as painting, caulking, cleaning and sweeping ("pre-opening work"). Plaintiffs are informed and believe that Defendants loosely kept track of the times these individuals spent performing pre-opening work. Plaintiffs are informed and believe that some of the time spent by these individuals may not have been compensated, and that such times may not have been accurately kept or recorded.

12. These individuals were scheduled by Bar Louie Defendants to perform pre-opening work for several weeks until the Bar Louie Restaurant in Anaheim opened approximately August 2008.

13. Upon its opening, and through the present day, Managing Agents, Defendants, Does 26-50, of Bar Louie Defendants at Bar Louie Restaurant in Anaheim have, from the top-down, devised, implemented, trained, and/or carried a set of policies, patterns and/or practices which have misinterpreted, misapplied and/or disregarded California's labor laws, including, but not limited, to the following:

    a. Misclassification of non-exempt employees as exempt managers and assistant managers in name only, when the job duties of such managers and assistant managers violate, among other California state laws and regulations, Labor Code sections 511 and 515, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates, FLSA Section 13(a)(1), and 29 U.S.C. Section 213(a)(1)(2000).

    b. Failure to provide or compensate non-exempt employees or former employees such as Plaintiffs and each of them with overtime and/or

12

double-time pay in violation of, among other California state laws and regulations, Labor Code sections 500, 510 and 511, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates, and the FLSA per 29 U.S.C. Sections 203, 206, 207 and 216.

c. Failure to provide non-exempt employees or former employees such as Plaintiffs and each of them with meal periods in violation of, among other California state laws and regulations, Labor Code sections 226.7 and 512, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates.

d. Failure to provide non-exempt employees such as Plaintiffs and each of them rest breaks in violation of, among other California state laws and regulations, Labor Code section 226.7, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates.

e. Failure to pay non-exempt employees or former employees such as Plaintiffs and each of them for penalties for violating or failing to enforce Labor Code section 226.7 regarding failure to provide or enforce meal periods, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates.

f. Failure to pay non-exempt employees or former employees such as Plaintiffs and each of them for penalties for violating or failing to enforce Labor Code section 226.7 regarding failure to provide or enforce rest breaks, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates.

g. Failure to promptly or timely pay non-exempt employees or former employees such as Plaintiffs and each of them with wages owed upon termination and/or upon the accrual of overtime compensation or

13

other wages owed in violation of Labor Code sections 201-204, and Industrial Welfare Commission (I.W.C.) Wage orders 5-1998, 5-2000, 5-2001, and all related updates.

h. Failure to provide non-exempt employees or former employees such as Plaintiffs and each of them with correct, adequate and/or proper pay stubs reflecting the wages properly owed by its non-exempt employees in violation of, among other California state laws and regulations, Labor Code section 226.

i. Failure to timely reimburse, if reimbursed at all, non-exempt employees or former employees such as Plaintiffs and each of them with the expenses each of them incurred in the course and scope of their duties in violation of, among other California state laws and regulations, Labor Code section 2802.

j. Failure to fulfill its obligations under individual, but apparently standardized written and/or implied-in-fact contracts Bar Louie Defendants entered into with each of their managers and assistant managers thereby depriving them of non-monetary wages or benefits to which they gave as consideration in exchange for purported agreements by said managers and assistant managers to work as supposed "at-will" employees. Said obligations included, but were not limited to, the following:

   i. Promises to provide, but failing to allow, pay or compensate general managers, bar managers, kitchen managers, assistant managers and/or managers-in-training for accrued paid vacation.

   ii. Promises to provide, but failing to enroll, pay or compensate general managers, bar managers, kitchen managers, assistant

FIRST AMENDED COMPLAINT

managers and/or managers-in-training relating to adequate health insurance plans.

iii. Promises to provide, but failing to enroll, provide adequate opportunity, pay or compensate general managers, bar managers, kitchen managers, assistant managers and/or managers-in-training relating to 401(k) programs.

k. Willfully failing and, with conscious disregard, subjecting employees to retaliation and preemptive retaliation in violation of Labor Code Section 1102.5 and *Lujan v. Minagar* (2004) 124 Cal.App.4[th] 1040 against any and all employees that spoke up or spoke out in objection to one, if not several, California labor laws in conjunction with the performance of work within the course and scope of their duties, including, but not limited to, the following methods:

   i. Refusing and/or reneging on promises to provide paid vacation days or pay,

   ii. Refusing and/or reneging on promises to provide health insurance to eligible employees,

   iii. Refusing and/or reneging on promises to provide 401(k) enrollment to eligible employees,

   iv. Refusing and/or reneging on promises to reimburse expenses incurred by employees within the course and scope of their duties,

   v. Recklessly or intentionally fabricating negative performance reviews and/or evaluations against employees who complained about violations of, or sought to assert their rights under, California labor laws,

   vi. Coercing those employees complaining or seeking to assert their rights under California labor laws to sign false admissions

15

FIRST AMENDED COMPLAINT

of blameworthiness, and/or to quit or resign from employment while discouraging them to obtain accrued unpaid wages, penalties and benefits earned by them,

vii. Wrongfully terminating certain employees, and potentially others, in violation of public policy pursuant to *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 301-02, 305, for voicing dissatisfaction with working conditions, i.e., non-compliance with California labor laws.

14. As a direct, proximate and legal consequence of Defendants' breach of the aforementioned laws, statutes and/or contractual duties, Plaintiffs, and each of them, have suffered economic and non-economic damages in excess of the jurisdictional minimum of this Court. Each of the Plaintiffs' claims are more fully set forth herein as follows:

15. Qwente Bryant was hired by Bar Louie Defendants to work at Bar Louie Restaurant in Anaheim in or around July 2008.

    a. Qwente Bryant started as barback, whose duties included, but was not limited to, assisting bartenders with making and serving drinks, cleaning, stocking and re-stocking inventory. As barback, Qwente Bryant also participated in pre-opening tasks and work.

    b. Qwente Bryant was thereafter made bartender, whose duties included, but was not limited to, making, pouring and serving drinks, cleaning, stocking and re-stocking inventory.

    c. Qwente Bryant was made bar manager during which time he was misclassified as an exempt, salaried employee with a rate of pay of purporting to exceed the minimum amount for a properly classified exempt salaried employee. However, less than half of his job duties as bar manager were exempt, and included such non-exempt tasks such

16

**FIRST AMENDED COMPLAINT**

as being responsible for working a minimum of two full shifts per week of bartending duties and, on other days, delegated with the dual function of bartender and bar manager. Collectively, his job duties in this capacity constituted non-exempt duties which were not professional, executive or administrative exempt in nature.

d. While as bar manager, Qwente Bryant was approached by Bar Louie Defendants and agreed to be general manager at a salary purporting to exceed the minimum amount for a properly classified exempt salaried employee which he was never provided. However, less than half of his job duties during his time as general manager were exempt, and included such non-exempt tasks that were not professional, executive or administrative in nature. Collectively, over half his job duties in this capacity constituted non-exempt duties.

e. Despite promises by Defendant to provide paid vacation time, paid health insurance, and participation in Defendants' 401(k) program inducing Qwente Bryant to be bar manager then general manager, Defendant never honored any of these promises.

f. Qwente Bryant is informed and believes that said failure by Bar Louie Defendants to honor its contractual obligations to him were made as part of a policy, pattern and/or practice by Defendants to, under pretense, enter into individual employment contracts with some, if not all, their managers which, at the time they made representations to honor or perform on promises they agreed to in each manager's individual contracts, Defendants knew that they would not honor some of the material promises, including but not limited to, promised paid vacation, medical coverage, reimbursement of personal funds expended during the course and scope of their employment with Bar Louie Defendants, and participation in a 401(k) plan. This knowledge

17

was hidden from all such managers, including Qwente Bryant, with the intention of inducing all such managers, including Qwente Bryant, to continue employment with Bar Louie Defendants. Qwente Bryant justifiably and reasonably relied upon said representations of Bar Louie Defendants to his detriment, and said representations, being false, were misrepresentations that proximately and legally caused economic and non-economic damages to Qwente Bryant in accordance with proof. Said misrepresentations were also ratified by Bar Louie Defendants' managing agents, Defendants, Does 26-50, and were malicious, oppressive and/or fraudulent thereby entitling Qwente Bryant to an award of punitive damages against Bar Louie Defendants and other Defendants in accordance with proof at the time of trial. At the current time, Qwente Bryant asserts that he is not in possession of his personnel file, which he is informed and believes is or should be in the possession, custody and/or control of Bar Louie Defendants. Based thereon, Qwente Bryant asserts that the facts and evidence that would enable him to allege the fraud perpetrated by Bar Louie Defendants and Managing Agents, Defendants, Does 26-50, against him with more specificity are currently unknown and unavailable to him, but because they rest in the possession of Defendants, Qwente Bryant has sufficiently pled the alleged fraud to pursue and conduct discovery against Defendants in this litigation.

g. Additionally, during the entirety of his employment with Bar Louie Defendants, he was a non-exempt employee entitled to overtime compensation, mandatory meal breaks and rest periods, itemized pay stubs, reimbursement of reasonable expenses in the course and scope of his duties, and the benefits of waiting time penalties for wages not timely paid. However, Bar Louie Defendants, either in part or in

whole, denied Qwente Bryant his legal rights relating to the benefits of overtime compensation, mandatory duty-free meal breaks, rest periods, itemized pay stubs, reimbursement of expenses incurred within the course and scope of his employment, and the right to penalties, moneys and/or wages owed for not timely being paid for overtime or other wage compensation, and/or failure to provide mandatory meal breaks and rest periods.

h.  Furthermore, despite working continuously for 21-plus months for Defendant from its inception in July 2008, and despite adequately, if not satisfactorily performing all the duties within the course and scope of his employment, Bar Louie Defendants made the decision to terminate Qwente Bryant in retaliation for objecting to non-compliance of California labor laws that Managing Agents, Defendants, Does 26-50, and Bar Louie Defendants, implemented and continued to implement against all its employees in the Bar Louie Restaurant in Anaheim, which was in violation of public policy pursuant to *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 301-02, 305. Therefore, Bar Louie Defendants' termination of him constituted retaliation against him, which further included fabricating a negative review of his performance in violation of, among other California state laws and regulations, Labor Code section 1102.5 (c,d) and/or *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040.

16. Lisa Cavanaugh was hired by Bar Louie Defendants in Anaheim in or around July 2008.

a.  Lisa Cavanaugh started as server, whose duties included, but was not limited to, bussing and waiting on tables, taking orders, serving customers, and cleaning.

19

---

**FIRST AMENDED COMPLAINT**

b. Lisa Cavanaugh was made bartender thereafter, during which time her duties included, but were not limited to, making and serving drinks, cleaning, stocking and re-stocking inventory.

c. Lisa Cavanaugh was then made manager-in-training during which time she was misclassified as an exempt, salaried employee with a rate of pay of purporting to exceed the minimum amount for a properly classified exempt salaried employee. However, less than half of her job duties as bar manager were exempt, and included such non-exempt tasks such as being responsible for working a minimum of two full shifts per week of bartending duties and, on other days, delegated with the dual function of bartender and bar manager. Collectively, over half of her job duties in this capacity constituted non-exempt duties which were not professional, executive or administrative in nature.

d. Thereafter, Lisa Cavanaugh was made bar manager during which time she was misclassified as an exempt, salaried employee with a rate of pay of purporting to exceed the minimum amount for a properly classified exempt salaried employee. However, less than half of her job duties as bar manager were exempt, and included such non-exempt tasks such as being responsible for working a minimum of two full shifts per week of bartending duties and, on other days, delegated with the dual function of bartender and bar manager. Collectively, over half of her job duties in this capacity constituted non-exempt duties which were not professional, executive or administrative in nature.

e. As of the filing of the original action, Lisa Cavanaugh remains employed by Bar Louie Defendants. Her current job duties are, as

20

they have been in the past, primarily non-exempt as opposed to professional, executive or administrative in nature.

f.  Despite promises by Bar Louie Defendants to provide paid vacation time, paid health insurance, and participation in Defendants' 401(k) program to induce Lisa Cavanaugh to be manager-in-training and then bar manager, Bar Louie Defendants never honored any of these promises.

g.  Lisa Cavanaugh is informed and believes that said failure by Bar Louie Defendants to honor its contractual obligations to her were made as part of a policy, pattern and/or practice by Defendants to, under pretense, enter into individual employment contracts with some, if not all, their managers which, at the time they made representations to honor or perform on promises they agreed to in each manager's individual contracts, Defendants knew that they would not honor some of the material promises, including but not limited to, promised paid vacation, medical coverage, reimbursement of personal funds expended during the course and scope of their employment with Bar Louie Defendants, and participation in a 401(k) plan. This knowledge was hidden from all such managers, including Lisa Cavanaugh, with the intention of inducing all such managers, including Lisa Cavanaugh, to continue employment with Bar Louie Defendants. Lisa Cavanaugh justifiably and reasonably relied upon said representations of Bar Louie Defendants to her detriment, and said representations, being false, were misrepresentations that proximately and legally caused economic and non-economic damages to Lisa Cavanaugh in accordance with proof. Said misrepresentations were also ratified by Bar Louie Defendants' managing agents, Defendants, Does 26-50, and were malicious, oppressive and/or fraudulent thereby entitling

21

**FIRST AMENDED COMPLAINT**

Lisa Cavanaugh to an award of punitive damages against Bar Louie Defendants and other Defendants in accordance with proof at the time of trial. At the current time, Lisa Cavanaugh asserts that she is not in possession of her personnel file, which she is informed and believes is or should be in the possession, custody and/or control of Bar Louie Defendants. Based thereon, Lisa Cavanaugh asserts that the facts and evidence that would enable her to allege the fraud perpetrated by Bar Louie Defendants and Managing Agents, Defendants, Does 26-50, against her with more specificity are currently unknown and unavailable to her, but because they rest in the possession of Defendants, Lisa Cavanaugh has sufficiently pled the alleged fraud to pursue and conduct discovery against Defendants in this litigation.

h. Additionally, during the entirety of her employment with Bar Louie Defendants, she was a non-exempt employee entitled to overtime compensation, mandatory meal breaks and rest periods, itemized pay stubs, reimbursement of reasonable expenses in the course and scope of her duties, and the benefits of waiting time penalties for wages not timely paid. However, Bar Louie Defendants, either in part or in whole, denied Lisa Cavanaugh her legal rights relating to the benefits of overtime compensation, mandatory duty-free meal breaks, rest periods, itemized pay stubs, reimbursement of expenses incurred within the course and scope of her employment, and the right to penalties, moneys and/or wages owed for not timely being paid for overtime or other wage compensation, and/or failure to provide mandatory meal breaks and rest periods.

i. Furthermore, despite being employed by Bar Louie Defendants continuously since July 2008, and despite adequately, if not satisfactorily performing all the duties within the course and scope of

22

her employment, Lisa Cavanaugh was subject to a policy and practice of retaliation by Managing Agents, Defendants, Does 26-50, and Bar Louie Defendants, including, but not limited to, preparing false negative evaluations of her performance in addition to seeking to coerce her to admit such falsehoods against her will, which was in violation of, among other California state laws and regulations, Labor Code Section 1102.5; suspending her from employment, without cause and in bad faith, and taking away "taxable tip income" on tip income that she never earned during her suspension; and despite working continuously since July 2008, and despite adequately, if not satisfactorily performing all the duties within the course and scope of her employment, Bar Louie Defendants made the decision to terminate Lisa Cavanaugh shortly before the filing of the original Complaint which, on information and belief, was in retaliation for objecting to non-compliance of California labor laws that Managing Agents of Bar Louie Defendants implemented and continued to implement against all its employees in the Bar Louie Restaurant in Anaheim, which was in violation of public policy pursuant to *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 301-02, 305. Therefore, Bar Louie Defendants' termination of her constituted retaliation and/or preemptive retaliation in violation of, among other California state laws and regulations, Labor Code section 1102.5 (c,d) and/or *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040.

17. Michael Lance Kennedy was hired by Bar Louie Defendants in Anaheim in or around September 2009.

   a. Michael Lance Kennedy started as manager-in-training during which time he was misclassified as an exempt, salaried employee with a rate

**FIRST AMENDED COMPLAINT**

of pay of purporting to exceed the minimum amount for a properly classified exempt salaried employee. However, less than half of his job duties as such were exempt, and included such non-exempt tasks such as being responsible for working a minimum of two full shifts per week of bartending duties and, on other days, delegated with the dual function of bartender and bar manager. Collectively, over half of his job duties in this capacity constituted non-exempt duties which were not professional, executive or administrative in nature.

b. Thereafter, Michael Lance Kennedy was made bar manager during which time he was misclassified as an exempt, salaried employee with a rate of pay of purporting to exceed the minimum amount for a properly classified exempt salaried employee. However, less than half of his job duties as bar manager were exempt, and included such non-exempt tasks such as being responsible for working a minimum of two full shifts per week of bartending duties and, on other days, delegated with the dual function of bartender and bar manager. Collectively, over half of his job duties in this capacity constituted non-exempt duties which were not professional, executive or administrative in nature.

c. Despite promises by Bar Louie Defendants to provide paid vacation time, paid health insurance, and participation in Defendants' 401(k) program to induce Michael Lance Kennedy to be manager-in-training and then bar manager, Bar Louie Defendants never honored any of these promises.

d. Michael Lance Kennedy is informed and believes that said failure by Bar Louie Defendants to honor its contractual obligations to him were made as part of a policy, pattern and/or practice by Defendants to, under pretense, enter into individual employment contracts with some,

24

---

if not all, their managers which, at the time they made representations to honor or perform on promises they agreed to in each manager's individual contracts, Defendants knew that they would not honor some of the material promises, including but not limited to, promised paid vacation, medical coverage, reimbursement of personal funds expended during the course and scope of their employment with Bar Louie Defendants, and participation in a 401(k) plan. This knowledge was hidden from all such managers, including Michael Lance Kennedy, with the intention of inducing all such managers, including Michael Lance Kennedy, to continue employment with Bar Louie Defendants. Michael Lance Kennedy justifiably and reasonably relied upon said representations of Bar Louie Defendants to his detriment, and said representations, being false, were misrepresentations that proximately and legally caused economic and non-economic damages to Michael Lance Kennedy in accordance with proof. Said misrepresentations were also ratified by Bar Louie Defendants' managing agents, Defendants, Does 26-50, and were malicious, oppressive and/or fraudulent thereby entitling Michael Lance Kennedy to an award of punitive damages against Bar Louie Defendants and other Defendants in accordance with proof at the time of trial. At the current time, Michael Lance Kennedy asserts that he is not in possession of his personnel file, which he is informed and believes is or should be in the possession, custody and/or control of Bar Louie Defendants. Based thereon, Michael Lance Kennedy asserts that the facts and evidence that would enable him to allege the fraud perpetrated by Bar Louie Defendants and Managing Agents, Defendants, Does 26-50, against him with more specificity are currently unknown and unavailable to him, but because they rest in

FIRST AMENDED COMPLAINT

the possession of Defendants, Michael Lance Kennedy has sufficiently pled the alleged fraud to pursue and conduct discovery against Defendants in this litigation.

e. Additionally, during the entirety of his employment with Bar Louie Defendants, he was a non-exempt employee entitled to overtime compensation, mandatory meal breaks and rest periods, itemized pay stubs, reimbursement of reasonable expenses in the course and scope of his duties, and the benefits of waiting time penalties for wages not timely paid. However, Bar Louie Defendants, either in part or in whole, denied Michael Lance Kennedy his legal rights relating to the benefits of overtime compensation, mandatory duty-free meal breaks, rest periods, itemized pay stubs, reimbursement of expenses incurred within the course and scope of his employment, and the right to penalties, moneys and/or wages owed for not timely being paid for overtime or other wage compensation, and/or failure to provide mandatory meal breaks and rest periods.

f. Furthermore, despite being employed by Bar Louie Defendants continuously since September 2009 until his termination, and despite adequately, if not satisfactorily performing all the duties within the course and scope of her employment, Michael Lance Kennedy was subject to a policy and practice of retaliation by Managing Agents, Defendants, Does 26-50, and Bar Louie Defendants, including, but not limited to, suspending him from employment, without cause and in bad faith, and taking away "taxable tip income" on tip income that he never earned during his suspension; and furthermore, attempting to delay, if not prevent him from obtaining benefits or exercising his employment rights with Bar Louie Defendants upon termination of his employment with them in violation of, among other California state

26

FIRST AMENDED COMPLAINT

laws and regulations, Labor Code section 1102.5 (c,d) and/or *Lujan v. Minagar* (2004) 124 Cal.App.4[th] 1040.

18. Holly Richardson was hired by Bar Louie Defendants in Anaheim in or around July 2008.

   a. Holly Richardson started as server, whose duties included, but was not limited to, bussing and waiting on tables, taking orders, serving customers, and cleaning.

   b. After being server, Holly Richardson was made District Training Manager and assigned to work out of all three Restaurants America restaurants at that time in California, i.e., Bar Louie Restaurant in Anaheim, Town Hall Restaurant in Sherman Oaks and Bar Louie Restaurant in Arcadia. During the timeframe she held this position, which she held continuously until her termination, she was misclassified, for at least a substantial portion of her position, as an exempt, salaried employee with a rate of pay of purporting to exceed the minimum amount for a properly classified exempt salaried employee. However, for at least a substantial portion of her position, less than half of her job duties in this position were exempt.

   c. Bar Louie Defendants promised to provide prompt reimbursement and/or a set pre-paid allowance regarding cell phone usage, travel allowances, hotel stays, per diems, and business-related expenses incurred on behalf of Bar Louie Defendants in the course and scope of her duties for Bar Louie Defendants; paid vacation time; paid health insurance; and participation in Defendants' 401(k) program. All these promises were made by Bar Louie Defendants to induce Holly Richardson to become District Training Manager for increased substantial pay from server, Bar Louie Defendants failed to honor many of these promises in breach of their employment agreement.

**FIRST AMENDED COMPLAINT**

d. Holly Richardson is informed and believes that said failure by Bar Louie Defendants to honor its contractual obligations to her were made as part of a policy, pattern and/or practice by Defendants to, under pretense, enter into individual employment contracts with some, if not all, their managers which, at the time they made representations to honor or perform on promises they agreed to in each manager's individual contracts, Defendants knew that they would not honor some of the material promises, including but not limited to, promised paid vacation, medical coverage, reimbursement of personal funds expended during the course and scope of their employment with Bar Louie Defendants, and participation in a 401(k) plan. This knowledge was hidden from all such managers, including Holly Richardson, with the intention of inducing all such managers, including Holly Richardson, to continue employment with Bar Louie Defendants. Holly Richardson justifiably and reasonably relied upon said representations of Bar Louie Defendants to her detriment, and said representations, being false, were misrepresentations that proximately and legally caused economic and non-economic damages to Holly Richardson in accordance with proof. Said misrepresentations were also ratified by Bar Louie Defendants' managing agents, Defendants, Does 26-50, and were malicious, oppressive and/or fraudulent thereby entitling Holly Richardson to an award of punitive damages against Bar Louie Defendants and other Defendants in accordance with proof at the time of trial. At the current time, Holly Richardson asserts that she is not in possession of her personnel file, which she is informed and believes is or should be in the possession, custody and/or control of Bar Louie Defendants. Based thereon, Holly Richardson asserts that the facts and evidence that would enable her to allege the fraud

FIRST AMENDED COMPLAINT

perpetrated by Bar Louie Defendants and Managing Agents, Defendants, Does 26-50, against her with more specificity are currently unknown and unavailable to her, but because they rest in the possession of Defendants, Holly Richardson has sufficiently pled the alleged fraud to pursue and conduct discovery against Defendants in this litigation.

e. Additionally, during a portion, if not the entirety, of her employment with Bar Louie Defendants, she was a non-exempt employee entitled to overtime compensation, mandatory meal breaks and rest periods, itemized pay stubs, reimbursement of reasonable expenses in the course and scope of his duties, and the benefits of waiting time penalties for wages not timely paid. However, Bar Louie Defendants, either in part or in whole, denied Holly Richardson her legal rights relating to the benefits of overtime compensation, mandatory duty-free meal breaks, rest periods, itemized pay stubs, reimbursement of expenses incurred within the course and scope of her employment, and the right to penalties, moneys and/or wages owed for not timely being paid for overtime or other wage compensation, and/or failure to provide mandatory meal breaks and rest periods.

f. Furthermore, despite working continuously for Bar Louie Defendants, and despite adequately, if not satisfactorily performing all the duties within the course and scope of her employment, Bar Louie Defendants made the decision to terminate Holly Richardson and did terminate her from employment as a proximate result of her multiple communications to Bar Louie Defendants that they and their Managing Agents, Defendants, Does 26-50, were, among other issues, failing to comply with various California labor laws, including the failure to promptly, if at all, reimburse said managers and her for

**FIRST AMENDED COMPLAINT**

reasonable expenses incurred in the course and scope of their employments with Bar Louie Defendants, which violates Labor Code Section 2802, among other statutes and regulations, and constitutes a violation of public policy. Given the circumstantial evidence relating to other terminated managers, and on information and belief, Holly Richardson asserts that Bar Louie Defendants retaliated against her by making her to be the "scapegoat" for any and all such labor code violations, even though they never adequately or properly trained her on such laws and, by virtue of failing, if not refusing, to reimburse her for a substantial amount of expenses she had reasonably incurred in the course and scope of her employment, coerced her into quitting her position of District Training Manager and take a much less paying full-time position of her original position of server with Bar Louie Defendants' restaurant in Anaheim. However, before she could even re-start the position of server, she was given notice of her termination and told by Managing Agents, Defendants, Does 26-50, that she was terminated for supporting the managers in the restaurant instead of the Managing Agents, Defendants, Does 26-50. Said termination of Holly Richardson is in violation of public policy pursuant to *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 and *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 301-02, 305. Said retaliation against Holly Richardson further constituted retaliation and/or preemptive retaliation in violation of, among other California state laws and regulations, Labor Code Section 1102.5 (c,d) and/or *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040.

19. Robin Tamburri was working at Red Star Tavern, one of the "sister" restaurants of Bar Louie Defendants, in Newport News, Virginia prior to the opening of Bar Louie Restaurant in Anaheim.

FIRST AMENDED COMPLAINT